# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**DENNIS JOHNS,**

**Plaintiff,**

**v.**                                                      **CIV 03-0302 LAM**

**JO ANNE B. BARNHART,**
**Commissioner, Social Security**
**Administration,**

**Defendant.**

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (*Doc. 12*). In accordance with 28 U.S.C. § 636(c)(1) and FED. R. CIV. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion and the memorandum in support of the motion (*Doc. 13*), Defendant's response to the motion (*Doc. 16*), Plaintiff's reply to the response (*Doc. 17*), and relevant law. Additionally, the Court has carefully reviewed and considered the entire administrative record (hereinafter, "*Record*" or "*R.*"). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **GRANTED IN PART AND DENIED IN PART**, and this case **REMANDED** to the Commissioner of Social Security (hereinafter, "the Commissioner") for further proceedings, including a re-hearing, consistent with this Memorandum Opinion and Order.

# I.  Procedural History

Plaintiff, Dennis Johns, filed applications for disability insurance benefits and supplemental security income payments on March 23, 2000.  (*R. at 63-65, 236-238.*)  In connection with his applications, he alleged a disability since June 28, 1998, due to back injuries and related spinal fusion surgeries causing physical limitations and pain.  (*R. at 63, 104, 236*.)  Plaintiff's applications were denied at the initial and reconsideration levels.  (*R. at 39-42, 45-47, 240-243*.)

The Administrative Law Judge (hereinafter, "ALJ") conducted a hearing on July 6, 2001.  (*R. at 248-280.*)  Plaintiff was represented at the hearing by an attorney. (*R. at 250.*)  A vocational expert (hereinafter, "VE") also testified at the hearing.  (*R. at 273-279.*)  On November 16, 2001, the ALJ issued his decision in which he made the following findings, *inter alia,* with regard to Plaintiff pursuant to the sequential analysis set forth in 20 C.F.R. §§ 404.1520 and 416.920: (1) claimant meets the non-disability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through December of 1999; (2) claimant has not engaged in substantial gainful activity since his alleged onset of disability; (3) claimant has an impairment or combination of impairments considered "severe"; (4) claimant's medically determinable impairments do not meet or medically equal a listed impairment; (5) claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the ALJ's decision; (6) claimant has the residual functional capacity (hereinafter, "RFC") to lift twenty pounds occasionally and ten pounds frequently, he may engage in simple and repetitive work that involves sitting or standing up to six hours in each eight-hour work day, and he may occasionally balance, stoop, kneel, climb or crawl, although he should never climb rope or squat; (7) claimant is unable to

perform any of his past relevant past work[1]; (8) claimant is a younger individual; (9) claimant has a limited education;  (10) claimant has transferable skills from semi-skilled work that he previously performed; (11) claimant has the RFC to perform a significant range of light work; (12) although claimant's exertional limitations do not allow him to perform the full range of light work, using *Medical-Vocational Rule 202.19* as a framework for decision-making there are a significant number of jobs in the national economy that claimant could perform including work as a dining room attendant (*DOT* 311.677-018), laundry spotter (*DOT* 361.684-018) and office helper (*DOT* 239.567-010)[2]; and (10) claimant was not under a "disability", as defined in the Social Security Act, at any time through the date of the decision.  (*R. at 24-25.*)

After the ALJ issued his decision, Plaintiff filed a request for review on December 11, 2001. (*R. at 8.*)  On January 28, 2003, the Appeals Council issued its decision denying Plaintiff's request for review (*R. at 5-6*), making the ALJ's decision the final decision of the Commissioner.  Plaintiff subsequently filed his complaint for court review of the ALJ's decision on March 10, 2003. (*Doc. 1*)[3]

---

[1] The ALJ appeared to agree with the VE that Plaintiff's past relevant work was as a "construction laborer".  (*R. at 23.*)

[2] All references are to these occupations as listed in the U.S. Department of Labor's *Dictionary of Occupational Titles*, Fourth Edition, Revised 1991 (hereinafter, "*Dictionary of Occupational Titles*" or "*DOT*").

[3] The Court notes that Plaintiff was subsequently found disabled and entitled to supplemental security income payments in another case on July 23, 2003.  *See Exhibit B to Plaintiff's Reply in Support of Motion to Reverse or Remand Administrative Agency Decision*.  In that case, in which additional evidence was submitted, the ALJ refused to reopen and revise the decision at issue in this case. *Id.*

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Sec'y. of Health and Human Services*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (further citation omitted)).  Substantial evidence is more than a mere scintilla of evidence but less than a preponderance. *See, e.g., Sisco v. U. S. Dep't. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993).  In making the substantial evidence determination on review, the Court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III.  Plaintiff's Age, Education, Work Experience and Medical History

Plaintiff is currently fifty-one years old. (*R. at 63.*)  At the time of the administrative hearing, he was forty-eight years old.  Plaintiff attended, but did not complete, grade school and obtained a GED while serving in the military. (*R. at 110, 218, 264.*)  During the fifteen year period prior to the ALJ's decision, Plaintiff worked as a construction laborer. (*R. at 105, 258-259.*)  Plaintiff also testified that he tried working at a barbecue pit after he injured his back in 1998. (*R. at 265.*)

Prior to 1998, Plaintiff injured his back and underwent a spinal fusion at levels L4 through S1. (*R. at 130, 162, 174-175.*)  In July of 1998, Plaintiff fell in a hole while doing construction work and injured his back a second time. (*R. at 133, 174.*)  In January of 1999, he underwent a second spinal fusion at levels L3 through L4. (*R. at 162.*)  Plaintiff has a history of complaints of chronic back pain. (*R. at 117, 140, 150, 162, 166, 190, 210, 213, 215.*)

4

Plaintiff's second spinal fusion surgery was performed by Claude D. Gelinas, M.D.  (*R. at 160, 162.*)  Post-surgery on February 2, 1999, Dr. Gelinas reported Plaintiff was "doing relatively well."  (*R. at 159.*) On March 16, 1999, Dr. Gelinas indicated Plaintiff was "doing extremely well", with his leg pain "almost completely gone" and his back pain "significantly improved."  (*R. at 157.*) On August 2, 1999, Dr. Gelinas prescribed physical therapy for Plaintiff and noted he was "doing relatively well."  (*R. at 154.*)  On September 20, 1999, Dr. Gelinas described Plaintiff as "doing well" and released him to "light-duty work . . . but to work no more than four hours a day, and no lifting greater than 20 pounds."  (*R. at 153.*)   On November 16, 1999, Dr. Gelinas noted that Plaintiff "really has taken a turn for the worse" even though "he was doing relatively well when I last saw him."  (*R. at 152.*)  During this visit, Plaintiff reported that he tried to go back to light-duty work at a barbeque stand and "standing all day cause[d] a severe increase in his back pain."  (*Id.*)  Dr. Gelinas restricted Plaintiff to "sedentary light-duty work with maximum lifting of 10 pounds, with no bending, twisting or lifting" and discontinued physical therapy.  (*Id.*)  Dr. Gelinas saw Plaintiff again on December 13, 1999, and noted a "significant flare-up of right shoulder and neck pain".  (*R. at 151.*)  Dr. Gelinas x-rayed Plaintiff's back and confirmed that his second back fusion was solid.  (*Id.*)  On December 28, 1999, Dr. Gelinas saw Plaintiff and noted that he was "still having a significant amount of back pain".  (*R. at 150.*)  He noted that Plaintiff had "a significant flat back from his previous surgery, with both anterior and posterior fusion" and  "the biggest problem he has is due to his significant altered anatomy due to his previous surgery."  (*Id.*)  To repair this, he indicated, "would require a vastly large amount of surgery for only the possibility of a very short gain."  (*Id.*)  Dr. Gelinas noted, "I have essentially told Dennis that he just has to learn to live with the pain that he has, and try to function as best as possible."  (*Id.*)  Dr. Gelinas noted that Plaintiff would be placed

at "maximum medical improvement on 1/15/2000", given "an impairment rating according to the AMA Guidelines Fourth Edition of 10% placing him at DRE Category-3", and given "a permanent restriction for light-duty work, with no lifting over 20 pounds." (*Id.*)

Dr. Gelinas next saw Plaintiff eleven months later on November 14, 2000. (R. at 215.)  At that time, Plaintiff was "still complaining of a lot of back pain." (*Id.*)  Dr. Gelinas noted that Plaintiff was "[n]eurologically . . . unchanged". (*Id.*)  He x-rayed Plaintiff's back, confirmed that his fusion was still solid, and recommended continuation of an exercise plan. (*Id.*)  In his notes, Dr. Gelinas stated, "[u]nfortunately, there is nothing further that I think I can do for him, and I do think that he is limited to a sedentary light duty position." (*Id.*)

Plaintiff returned to Dr. Gelinas on January 2, 2001. (*R. at 210, duplicate at 214.*)  During that visit, Dr. Gelinas' notes indicate that Plaintiff complained of "constant back pain" and said that he had "tried multiple different times to find some type of work that he is able to do and he is unable to tolerate it from a pain standpoint." (*Id.*)  Dr. Gelinas confirmed by x-ray that Plaintiff's fusion was solid and found there were "no other significant degenerative changes occurring above the previous fusion." (*Id.*)  Dr. Gelinas noted his belief that Plaintiff "is disabled at this point in time." (*Id.*)

On January 12, 2001, Dr. Gelinas provided Plaintiff's attorney with a letter stating his opinion that Plaintiff "definitely meets the criteria of Disorders of the Spine 1.05, specifically Category C"; however, the letter contained no findings in support of this opinion. (*R. at 208.*)  On the same date, Dr. Gelinas completed a "Statement of Ability to Do Work-Related Physical Activities" form for Plaintiff in which he assigned Plaintiff the following impairment-related physical limitations: (1) "[o]ccasionally lift and/or carry (including upward pulling) (maximum) . . . less than 10 pounds;" (2) "[f]requently lift and/or carry (including upward pulling) (maximum) . . . less than 10 pounds;"

6

(3) "[s]tand and/or walk (with normal breaks) for a total of less than 2 hours in an 8-hour workday;"
(4) "[m]ust periodically alternate sitting and standing to relieve pain or discomfort;" and (5) "[p]ush
and/or pull (including operation of hand and/or feet controls) [l]imited in lower extremities."
(*R. at 209.*)  The spaces on this form for the medical findings in support of each limitation were left
blank.  (*Id.*)

Plaintiff saw Dr. Gelinas again on July 2, 2001.  (*R. at 213.*)  During that visit, Plaintiff
complained of constant back pain and reported that he was unable to work because of the pain.  (*Id.*)
In his notes, Dr. Gelinas expressed the following opinion about Plaintiff's condition:

> It is my opinion that this patient cannot be gainfully employed and
> should be given disability.  I am not a disability doctor, as I have told
> him multiple times.  At this point, I do believe that he has not been
> able to be gainfully employed from the time of December 31st to the
> present, nor do I expect this to change significantly.  Certainly if he
> was to get a completely sedentary job with no bending or twisting at
> all and frequent periods of being allowed to get up and walk around,
> that he may be able to do this.

(*Id.*)

On June 20, 2000, Plaintiff was physically evaluated for the Commissioner by consultative
physician Eva C. Pacheco, M.D.  (*R. at 189.*)  Dr. Pacheco examined Plaintiff and prepared a report
of her evaluation.  (*R. at 189-192.*)  In her report, Dr. Pacheco noted that Plaintiff delayed answering
her questions and "appeared to be of limited intelligence".  (*R. at 191.*)  She recommended a
psychological evaluation to determine if Plaintiff's delay in answering questions was a function of
possible depression or of his intelligence level.  (*R. at 192.*)  Dr. Pacheco stated that Plaintiff "should
be allowed to perform any task with extra time and perhaps repeated instructions", and noted her
suspicion that "he will be unable to perform any projects that require complicated plans." (*Id.*)

Dr. Pacheco said Plaintiff "should keep his total work restrictions limited to no lifting above 20 pounds because of his surgeries and to prevent further injury." (*Id.*)

On July 20, 2000, the state agency physician assessed Plaintiff's physical residual functional capacity and agreed with Dr. Pacheco's finding that Plaintiff should be limited to no lifting above twenty pounds. (*R. at 193-200.*)

After the administrative hearing, the ALJ ordered a psychological evaluation and testing of Plaintiff. (*See R. at 218, 279.*) This evaluation and testing were done by psychologist David J. LaCourt, Ph.D. (*R. at 218.*) Dr. LaCourt examined Plaintiff on August 6, 2001, and prepared a report of his evaluation and Plaintiff's test results. (*R. at 218-235.*) Dr. LaCourt assigned Plaintiff the following DSM-IV[4] diagnoses: dysthymic disorder, reading disorder, disorder of written expression and borderline intellectual functioning. (*R. at 221.*) The "essential feature" of dysthymic disorder is "a chronically depressed mood that occurs for most of the day more days than not for at least 2 years."[5] "Reading disorder" and "disorder of written expression" are learning disorders.[6] "Borderline intellectual functioning" is an IQ in the range of 71-84.[7] Dr. LaCourt assessed Plaintiff using a mental status examination, the Wechsler Adult Intelligence Scale, Third Edition (WAIS-III), and the Wide Range Achievement Test, Revision 3 (WRAT3). (*R. at 218.*) As part of his evaluation, Dr. LaCourt completed a "Psychiatric - Psychological Source Statement of Ability to do Work-

---

[4]American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 - 34 (4th ed., Text Revision, 2000) (hereinafter "DSM-IV").

[5]DSM-IV-TR, at 376.

[6]Id. at 49.

[7]Id. at 740.

Related Activities (Mental - MSS)" form for Plaintiff on which he noted that Plaintiff is "functionally close to being illiterate", reads at the third grade level, writes at the first grade level, and has math skills at about the fifth grade level. (*R. at 222-224.*) Dr. La Court also noted that Plaintiff has limitations in understanding and remembering instructions, limitations in sustained concentration and task persistence and limitations in adaptation. (*Id.*) According to Dr. LaCourt, Plaintiff's full scale IQ, as determined by the testing, is 75 which places him in the borderline range of below average intellectual functioning. (*R. at 220.*) The *Record* does not include a completed Psychiatric Review Technique form for Plaintiff; however, the ALJ incorporated findings and conclusions in his decision documenting his application of the technique for evaluating mental impairments pursuant to 20 C.F.R. §§ 404.1520a and 416.920a. (*R. at 18-21.*)

## IV.  Discussion/Analysis

The ALJ denied Plaintiff benefits at step five of the five-part sequential analysis for determining disability.  The Commissioner has the burden at this step to show that Plaintiff can perform other work available in significant numbers in the national economy considering his RFC, age, education and past work experience.  *See Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir.1984); 20 C.F.R. §§ 404.1520, 416.920.  In denying Plaintiff benefits at step five, the ALJ relied on the testimony of the VE and used the *Medical-Vocational Guidelines*[8] (hereinafter, "*Guidelines*") as a framework for decision-making.  (*R. at 24.*)  The ALJ concluded that Plaintiff was not disabled within the framework of *Medical-Vocational Rule 202.19* of the *Guidelines* because he had the RFC to perform a significant range of light work and there were a significant number of jobs in the national

---

[8]The *Guidelines* are at 20 C.F.R., Pt. 404, Subpt. P, App. 2.

economy that he could perform, including dining room attendant, laundry spotter and office helper. (*R. at 24-25.*)

Plaintiff contends that the ALJ erred at steps three and five of the sequential analysis. Specifically, Plaintiff argues that the ALJ: (1) failed to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Gelinas, that Plaintiff's physical impairment met the requirements of Listing § 1.05(C); (2) failed to assess Plaintiff's mental RFC and include Plaintiff's mental limitations in his hypothetical questions to the VE; (3) made unsupported findings that Plaintiff could perform the jobs of dining room attendant, laundry spotter and office helper when there was substantial evidence to the contrary; and (4) erred in his assessment of Plaintiff's credibility.

Defendant argues that the ALJ applied the correct legal standards and correctly determined that Plaintiff is not disabled based on substantial evidence.

### A.  Opinion of Plaintiff's Treating Physician

Plaintiff argues that the ALJ erred at step three of the sequential analysis by failing to give controlling weight to Dr. Gelinas' opinion that Plaintiff's back condition met the requirements of Listing § 1.05(C).

An ALJ must give controlling weight to the opinion of a claimant's treating physician if the opinion is well-supported and not inconsistent with other substantial evidence in the record. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001); 20 C.F.R. §§ 404. 1527(d)(2), 416.927(d)(2). If an ALJ rejects a treating physician's opinion, the ALJ must articulate "specific, legitimate reasons" for doing so. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

In this case, the ALJ rejected the opinion of Plaintiff's treating physician, Dr.Gelinas, contained in his letter of January 12, 2001, that Plaintiff's back impairment met the criteria for Listing § 1.05(C). (*R. at 19-20, 208-209.*) At the time of Dr. Gelinas' opinion, that listing was defined as:

> C. Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months: With both 1 and 2:
>
> 1. Pain, **muscle spasm**, and significant limitation of motion in the spine; and
>
> 2. Appropriate radicular distribution of **significant motor loss** with muscle weakness and sensory and reflex loss. (Emphasis added.)[9]

Instead, the ALJ found that Plaintiff suffered from the impairment of degenerative disc disease of the lumbosacral spine which was severe but did not rise to the level of a listed impairment. (*R.at 20.*)

The ALJ explained in detail why he rejected Dr. Gelinas' opinion and gave specific, legitimate reasons for doing so. The ALJ concluded that the *Record* lacked medical findings to support Dr. Gelinas' opinion that Plaintiff met the listing requirements of § 1.05(C); he also concluded that Dr. Gelinas' opinion was inconsistent with other evidence in the *Record*. (*R. at 19-20.*) The Court agrees with the ALJ's conclusions. First, there are no medical findings in Dr. Gelinas' January 12, 2001 letter or the attached "Statement of Ability to Do Work-Related Physical Activities" form. (*R. at 208-209.*) To be accorded controlling weight, a treating physician's medical opinion must be "'well-supported' by 'medically acceptable' clinical and laboratory diagnostic techniques." *Soc. Sec. Rul. 96-2p*, 1996 W.L. 374188 at *2. Second, in the medical records following Plaintiff's second

---

[9]20 C.F.R. Pt. 404, Subpt. P, App. 1 (no longer effective). Although Plaintiff has not raised the issue, the Court agrees with the Appeals Council (*R. at 5*) that the new listings for musculoskeletal impairments, effective after Dr. Gelinas gave his opinion, do not provide a basis to change the ALJ's decision given the *Record* in this case. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04.

fusion surgery, Dr. Gelinas fails to note that Plaintiff suffered from muscle spasms or sustained "significant motor loss with muscle weakness and sensory and reflex loss," which were both requirements of § 1.05(C). (*R. at 150-161, 210, 213, 215-217.*)  Third, Dr. Gelinas' January, 2001 listing opinion was a significant change from his opinion in December, 1999 that, as of January 15, 2000, Plaintiff would be placed at maximum medical improvement with a permanent restriction to light-duty work with no lifting over twenty pounds. (*R. at 150.*)  Yet, Dr. Gelinas' own treatment records fail to document a corresponding deterioration of Plaintiff's physical condition during the time period between December, 1999 and January, 2001.  (*R. at 150, 210, 213, 215.*)  Fourth, with the exception of Dr. Gelinas' January, 2001 listing opinion,  his medical findings and his December, 1999 opinion that Plaintiff was limited to light work with no lifting over twenty pounds are generally consistent with Dr. Pacheco's findings in her examination report.  Dr. Pacheco found no muscle spasms on palpation of Plaintiff's spine and no significant motor loss.  (*R. at 189-192.*)  She also was of the opinion that Plaintiff should be restricted at work to no lifting above twenty pounds because of his back condition.  (*R. at 192.*)  Finally, the Court notes that Dr. Gelinas' opinion that Plaintiff met a listing requirement and was disabled (*R. at 208, 210, 213*) was not dispositive because "final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Castellano v. Sec'y. of Health and Human Services*, 26 F.3d 1027, 1029 (10th Cir. 1994); *see also, Soc. Sec. Rul. 96-5p*, 1996 W.L. 374183, at *2 (treating source opinions on issues reserved to Commissioner are not entitled to controlling weight or special significance because giving controlling weight to such opinions would abdicate Commissioner's statutory responsibility to determine if claimant is disabled).

The ALJ was not required to give controlling weight to Dr. Gelinas' opinion that Plaintiff met the requirements of Listing § 1.05(C) because this opinion was not well-supported and was inconsistent with other substantial evidence in the *Record* contained in Plaintiff's treatment records and the report of Dr. Pacheco. Additionally, the ALJ gave specific, legitimate reasons for rejecting Dr. Gelinas' opinion. Accordingly, the Court finds that the ALJ's conclusion at step three that Plaintiff's physical impairment failed to meet the requirements of Listing § 1.05(C) is legally correct and supported by substantial evidence in the *Record*.

### B.  Assessment of Plaintiff's Mental RFC and Hypothetical Questions to VE

Plaintiff argues that the ALJ failed to properly assess Plaintiff's mental RFC. Plaintiff contends that the ALJ made no assessment at all of Plaintiff's mental RFC and failed to include Plaintiff's mental limitations in his hypothetical questions to the VE. Plaintiff does not appear to challenge the ALJ's conclusion at step three of the sequential analysis that Plaintiff's mental impairment of borderline intellectual functioning is not severe enough to be considered a listed impairment. Defendant argues that the ALJ adequately accounted for Plaintiff's mental impairment by including a statement that Plaintiff was limited to "simple, repetitive work" in his assessment of Plaintiff's RFC and in his hypothetical questions to the VE.

The Court disagrees with Plaintiff that the ALJ made no assessment of Plaintiff's mental RFC; however, the Court finds that the ALJ's assessment did not adequately account for Plaintiff's mental impairment. Furthermore, the Court finds that the ALJ's hypothetical questions to the VE did not include all of Plaintiff's mental limitations. Therefore, the Court will remand this case for further proceedings, including a re-hearing, for the ALJ to re-assess Plaintiff's mental RFC and re-examine the VE with hypothetical questions that include all of Plaintiff's mental limitations.

13

When a claimant suffers from a severe mental impairment that is not severe enough to meet the requirements of a listed impairment at step three of the sequential analysis, the ALJ must assess the claimant's mental RFC. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3). The Tenth Circuit has emphasized the importance of assessing a claimant's mental RFC under these circumstances. "When the listing requirements for mental disorders are not met, but the impairment is nonetheless severe, [t]he determination of mental [residual functional capacity] is crucial to evaluation of an individual's capacity to engage in substantial gainful work activity." *Cruse v. U.S. Dep't. of Health & Human Services*, 49 F.3d 614, 619 (10th Cir. 1995) (alterations in original) (internal quotations omitted). The assessment of a claimant's mental RFC "complements the functional evaluation necessary for paragraphs B and C of the listings by requiring consideration of an expanded list of work-related capacities that may be affected by mental disorders." 20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.00(A).

In this case, the ALJ discussed why he concluded at step three that Plaintiff did not meet the listing requirements for § 12.04, Affective Disorders, and § 12.05, Mental Retardation. (*R. at 20.*) In doing so, he analyzed the "Part B" criteria of the listings, noting that Plaintiff's activities of daily living were only moderately restricted, that Plaintiff had no difficulty in maintaining social functioning, that Plaintiff had no difficulty in maintaining concentration, persistence or pace, and that Plaintiff had not experienced any repeated episodes of decompensation, each of extended duration. (*R. at 20.*) However, this analysis of the "Part B" criteria is not the equivalent of a mental RFC assessment. *Social Security Ruling 96-8p*, 1996 W.L. 374184 at *4. "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments ...." *Id. See also Cox v. Apfel*, 2000 W.L. 147279 at

*8 (D. Kan. Feb. 24, 2000) (unpublished).  The ALJ must assess a claimant's mental RFC in accordance with 20 C.F.R. §§ 404.1545(c) and 416.945(c) which require the ALJ to determine if the claimant has a limited ability to carry out certain mental activities in the workplace such as "limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

> Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.

*Soc. Sec. Rul. 96-8p*, 1996 W.L. 374184, at *6.  The ALJ's RFC assessment must include a narrative discussion that describes how the evidence supports his conclusions, discusses the claimant's "ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule)", and describes "the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  *Id.* at *7.  The ALJ must also explain how any "material inconsistencies or ambiguities in the case record were considered and resolved."  *Id.*

In this case, the ALJ discussed how he analyzed the "Part B" criteria to determine if Plaintiff had a listed impairment.  (*R. at 20.*)  However, he failed to discuss how Plaintiff's mental limitations affected his ability to do work-related activities.  Instead, the ALJ appeared to go directly from his analysis of the Part B criteria to his conclusion that Plaintiff had the RFC to perform simple, repetitive work.  The only mention of Plaintiff's mental limitations in the ALJ's RFC assessment is the statement that Plaintiff "may engage in simple, repetitive work."  (*R. at 23.*)

The ALJ's assessment of Plaintiff's mental RFC is not sufficient. It fails to adequately account for Plaintiff's mental limitations and describe how those limitations affect Plaintiff's ability to do work-related activities. On remand, the ALJ should more thoroughly evaluate Plaintiff's mental limitations and Dr. LaCorte's uncontradicted opinions in the *Record* that Plaintiff: (1) suffers from borderline intellectual functioning, dysthymia and learning disabilities; (2) has significant deficits in reading, writing and mathematics; and (3) has limitations in understanding and remembering instructions, sustained concentration and task persistence, and adaptation. (*R. at 218-224.*) The ALJ erred in not properly evaluating Plaintiff's mental RFC. Therefore, the Court will remand this case so that Plaintiff's mental limitations can be more fully assessed in determining his mental RFC.

In addition to his argument that the ALJ did not properly assess Plaintiff's mental RFC, Plaintiff argues that the ALJ failed to include Plaintiff's mental limitations in his hypothetical questions to the VE. The Court agrees. The only reference to Plaintiff's mental limitations in the ALJ's hypothetical questions to the VE were the ALJ's repeated statements that Plaintiff is "limited to simple repetitive work". (*R. at 275-278.*) The ALJ concluded after the hearing that Plaintiff had the severe mental impairment of borderline intellectual functioning and the VE did not have the benefit of this conclusion, or the related information in Dr. LaCorte's evaluation report, when she gave her opinions. (*R. at 274-279.*) Borderline intellectual functioning is a significant non-exertional impairment that must be considered by a vocational expert. *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997). Certain jobs require more mental capacity than others. For example, the job of office helper (*DOT* 239.567-010), which both the VE and the ALJ found that Plaintiff could perform (*R. at 25, 275*), requires the ability to "carry out detailed but uninvolved written or oral instructions" and the ability to "[w]rite compound and complex sentences, using cursive style, proper end

16

punctuation, and employing adjectives and adverbs." *DOT* 239.567-010.  It is quite possible that the VE in this case would not have opined that Plaintiff could perform this job if the ALJ had included Plaintiff's mental impairment of borderline intellectual functioning, and its related deficits, in  his hypothetical questions to the VE.

Testimony elicited by hypothetical questions to a VE must "relate with precision all of a claimant's impairments" in order to constitute substantial evidence to support a decision.  *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) (quoting *Ekeland v. Bowen*, 899 F.2d 719, 724 (8th Cir. 1990).  In this case, the ALJ's hypothetical questions to the VE should have included Plaintiff's mental impairment of borderline intellectual functioning and any other mental limitations identified in the ALJ's mental RFC assessment.  The ALJ's failure to do so requires remand and also renders the ALJ's finding that Plaintiff was not disabled at step five not supported by substantial evidence. The limitation in the ALJ's hypothetical questions to the VE that Plaintiff was limited to simple, repetitive work did not fully relate Plaintiff's mental impairments based on the *Record* of this case.  On remand, the ALJ's hypothetical questions to the VE must accurately describe Plaintiff's mental limitations with sufficient detail for the VE to render an accurate opinion that takes those limitations into account.

## C.  Plaintiff's RFC to Perform Other Jobs

Plaintiff argues that the ALJ made unsupported findings, based on his hypothetical questions to the VE, that Plaintiff could perform the jobs of dining room attendant, laundry spotter and office helper.  Defendant argues there was substantial evidence to the contrary indicating that Plaintiff was physically and mentally capable of performing those jobs.

Because the ALJ's re-assessment of Plaintiff's mental RFC and re-examination of the VE on remand could impact the VE's opinions of Plaintiff's ability to perform other jobs, the Court makes no determination of that issue here.   However, Plaintiff is correct that the job of dining room attendant (*DOT* 311.677-018), which is performed at the medium exertional level, is inconsistent with the ALJ's finding that Plaintiff is physically limited to light work.  (*R. at 25.*)  Therefore, on remand the job of dining room attendant should be eliminated from consideration unless the VE can explain this inconsistency.  *See Haddock v. Apfel*, 196 F.3d. 1084, 1091 (10th Cir. 1999) (ALJ must investigate and obtain a reasonable explanation of any conflict between the *Dictionary of Occupational Titles* and a vocational expert's testimony before the ALJ can rely on the expert's testimony).[10]

### D.  Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility.  The ALJ evaluated the evidence and concluded that Plaintiff's allegations of disability and disabling pain were not totally credible. (*R. at 22, 25.*) Therefore, the ALJ discounted Plaintiff's testimony and the medical expert's opinions based on the symptoms and history testified to by Plaintiff.  (*R. at 22.*)

"Credibility determinations are peculiarly the province of the finder of fact", and will not be overturned if supported by substantial evidence.  *Diaz v. Sec'y. of Health and Human Services*, 898 F.2d 774, 777 (10th Cir. 1990).   However, such deference is not absolute.  *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).  "Findings as to credibility should be closely and

---

[10]The Court does not find support in the *DOT* for Defendant's apparent argument that the occupation of "bus person", which is an alternate title for dining room attendant, has a lower exertional requirement than the occupation of dining room attendant.

affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

In this case, the ALJ closely and affirmatively linked his credibility findings to substantial evidence in the *Record*. First, the ALJ pointed out inconsistencies in Plaintiff's 1998 physical therapy reports. On September 17, 1998, the physical therapist reported that Plaintiff's subjective information with respect to neurological tests was "very inconsistent". (*R. at 141.*)  On October 1, 1998, the physical therapist reported progress in Plaintiff's functional ability and range of motion and the therapist's expectation that Plaintiff could reach maximal medical improvement in two weeks and move into a home exercise program.  (*R. at 139.*)  On October 21, 1998, the physical therapist reported that Plaintiff claimed to be in pain "at all times" and that Plaintiff's pain behavior was "inconsistent" and "inconsistent with tests and movements". (*R. at 138.*)  The therapist recommended a functional capacity assessment and further treatment with the goal of returning Plaintiff to work activities but Plaintiff did not return to physical therapy.  (*R. at 137-138.*)  The ALJ reasonably concluded from these records that Plaintiff may have been less than forthcoming in his complaints of pain to the physical therapist.  Second, the ALJ noted inconsistencies in Plaintiff's complaints and manifestations of pain during his examination by Dr. Pacheco.  Plaintiff complained to Dr. Pacheco of lower and upper back pain which he said was severe and happened daily.  (*R. at 190.*)  However, Dr. Pacheco noted that Plaintiff exhibited no pain until asked to perform range of motion and that he sat with no apparent distress in the same position for about twenty minutes during his examination. (*R. at 191.*)  She also noted that when she asked Plaintiff to turn from a supine to prone position, he was able to "sit forward rather rapidly without apparent discomfort".  (*R. at 191.*)  The ALJ found these inconsistencies similar to the observations of the physical therapist that Plaintiff's complaints

19

of pain were inconsistent and concluded that the Plaintiff's complaints of pain may be "only loosely related to his functional ability". (*R. at 21-22.*) The ALJ also noted that during the administrative hearing, Plaintiff "appeared to be fairly comfortable, although he did ask to stand at one point." (*R. at 22.*) Finally, the ALJ noted other inconsistencies in the *Record* causing him to discount Plaintiff's credibility. Plaintiff made conflicting statements about his level of education. (*R. at 110, 190, 264.*) Plaintiff also made conflicting statements about whether he looked for work during the period between Dr. Gelinas' December, 1999 opinion that he could do light work and Dr. Gelinas' January, 2001 opinion that Plaintiff was disabled. (*R. at 210, 265.*)

The ALJ did not dispute the fact that Plaintiff suffers from pain related to his back condition. (*R. at 19.*) However, the ALJ did not find Plaintiff's complaints of pain completely credible. The ALJ properly analyzed Plaintiff's testimony and the other evidence in the *Record* and outlined the reasons for his evaluation of Plaintiff's credibility. The reasons given by the ALJ for his finding that Plaintiff was not fully credible are supported by substantial evidence in the *Record*.

.
## V.  Conclusion

The ALJ did not err in failing to give controlling weight to, and rejecting, the opinion of Plaintiff's treating physician, Dr. Gelinas, that Plaintiff met the requirements of Listing § 1.05(C) and was disabled. Additionally, the ALJ properly analyzed Plaintiff's credibility and his finding that Plaintiff was not fully credible is supported by substantial evidence. Therefore, the Court will **DENY** Plaintiff's motion on those issues. However, the ALJ failed to properly assess Plaintiff's mental RFC and also failed to include all of Plaintiff's mental limitations in his hypothetical questions to the VE. Accordingly, the Court will **GRANT** Plaintiff's motion on those issues and remand this case for

further proceedings, including a re-hearing, for the ALJ to re-assess Plaintiff's mental RFC and re-examine the VE with hypothetical questions that include all of Plaintiff's mental limitations.

      **WHEREFORE, IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (*Doc. 12*) is **GRANTED IN PART AND DENIED IN PART** and this case is **REMANDED** to the Commissioner for further proceedings, including a re-hearing, consistent with this Memorandum Opinion and Order.

      **IT IS SO ORDERED.**


**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**